The primary issue herein is whether intervenor, Globe Security Bond and Mortgage Company, as pledgee of certain shares of capital stock of Wildwood Pier and Realty Company, acquired rights in that stock superior to the equitable rights asserted by complainants' bill.
The bill was filed by stockholders of the pier company against, though in behalf of, that corporation and seeks to compel defendant Lipkin, as owner of certain capital stock of that company, to surrender to that company certain stock which had been issued to him. The bill alleges that the stock was issued to Lipkin for property purchased, but to an amount in excess of the value of the property so purchased. Standing alone these averments would be inadequate to support relief, since it has been long determined in this state that after property has been purchased and stock issued for it, nothing short of actual fraud in the transaction can impair the rights of the holder to hold his stock as full-paid stock, free from other calls. Bickley v.Schlag, 46 N.J. Eq. 533; Donald v. American Smelting andRefining Co., 62 N.J. Eq. 729; McCarter v. Pitman, Glassboroand Clayton Gas Co., 74 N.J. Eq. 255. Whether fraud is adequately charged in the bill to meet these requirements is not for present consideration. Also, it may be here noted that inStephany v. Marsden, 76 N.J. Eq. 611, our court of errors and appeals questions the remedy here sought to compel the surrender and cancellation of stock. But that inquiry, like the one already suggested, is not for consideration at this time.
The present controversy alone relates to the rights of the Globe Security Bond and Mortgage Company, who has intervened in complainants' suit and asserted rights in the stock as superior to the rights asserted by complainants.
The evidence touching intervenor's claim establishes two facts which cannot be said to admit of substantial doubt. (1) The stock in controversy was regularly assigned in blank by Lipkin (then the registered owner) and delivered to intervenor as collateral security for a loan of money made by *Page 365 
intervenor as a part of the same transaction, and without knowledge, either actual or imputed, on the part of intervenor of any outstanding equities or claim against it. (2) After default the stock was sold by intervenor at public sale, pursuant to the power of sale incident to the pledge, and bought in by intervenor. At the time that sale was made intervenor had knowledge of the claims asserted by complainants herein.
1. It has been the recognized law of this state, both prior to and since the enactment of our Uniform Stock Transfer act (P.L.1916 p. 398) that either a purchaser or pledgee for value of capital stock of a corporation, who is without actual or imputed knowledge of equitable rights of others in the stock or of infirmities touching its validity, acquires his title free from such equities. Prall v. Tilt, 28 N.J. Eq. 479; EdmundWright-Ginsberg Co. v. Carlisle Ribbon Mills, 105 N.J. Eq. 411;affirmed, 108 N.J. Eq. 206. In some jurisdictions in which this general rule is recognized there has been diversity of opinions as to whether a purchaser of stock in satisfaction of a pre-existing debt, or a pledge of stock to secure an antecedent debt, is equally protected; this has arisen from the circumstance that stock has not been regarded as embraced within the lexmercatoria, and hence its transfers were only protected by the doctrine of estoppel. Accordingly, it has been held in that view that unless the pledgee of stock has changed his position by parting with a present consideration in faith of the pledge, or in some other manner, no estoppel arises against the pledgor or against the corporation issuing the stock. But in the present case a cash loan was made in part in faith of the pledge.
2. The circumstance that at the time the pledged stock was sold at public sale under the power of sale incident to the pledge the pledgee had acquired knowledge of the existence of complainants' claim, must be here deemed immaterial. Intervenor's rights as pledgee vested when the pledge was executed; subsequent notice to intervenor could neither divest nor modify such rights, and such rights embraced a power of sale. A sale of the pledge is the established method of foreclosing the lien under the rules of common law. Jones *Page 366 on Pledges and Collateral Securities (2d ed.) §§ 602, 603.
At that sale the rights acquired by intervenor as a bona fide
pledgee for value passed to a purchaser, whether the purchaser had notice of complainants' claims or not. That rule has been declared necessary to preserve to the original bona fide
purchaser or pledgee for value the rights he has acquired.Holmes v. Stout, 10 N.J. Eq. 419; Capital Circle No. 11, B. ofU. v. Schmitt, 84 N.J. Eq. 95; Ziembinski v. Wasniewski,95 N.J. Eq. 57; Paul v. Kerswell, 60 N.J. Law 273.
It may be here noted that it is a general rule that a pledgee cannot directly or indirectly purchase at a sale of the pledge, unless it is specifically provided by terms of a power accompanying the pledge that he may do so. But when a purchase is made by the pledgee at his own sale, without specific provision for that right contained in a power of sale, nothing passes by the form of sale, and the pledgee still holds the property under his original lien as collateral security. Jones on Pledges andSecurities (2d ed.) §§ 635, 637; 49 Corp. Jur. 1006 § 265.
Accordingly, it here is a matter of no concern whether a power of sale held by the pledgee specifically authorized the pledgee to purchase at the sale.
A decree will be advised determining the rights of intervenor to be superior to the rights sought to be enforced against the stock by complainants.