**FIRST NAT. BANK OF FAIRBANKS, ALASKA, v. ALASKA AIRMOTIVE, Inc.**

No. 9380.

Circuit Court of Appeals, Ninth Circuit.
April 21, 1941.

Charles E. Taylor, of Fairbanks, Alaska, and Lillick, Geary, Olson & Charles and Edwin L. Gerhardt, all of San Francisco, Cal., for appellant.

Julien A. Hurley, of Fairbanks, Alaska, and E. Coke Hill, of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appeal is taken from a judgment granting appellant a judgment for $6,500 and interest, declaring a stock certificate void, but adjudicating that upon surrender thereof, appellant was entitled to a new stock certificate, and to a sale thereof in satisfaction of the money judgment.

Alaska Airmotive Co. was created in 1935 as a partnership. On November 26, 1937, the partners were Hoffman, Armitstead and Schrank. On that day a meeting of the partners was had, and Schrank agreed to sell to the other partners her one-third interest in the firm for $3,000. Minutes of the meeting were made, and sent to appellant. On the same day Schrank executed a bill of sale to the other partners covering her interest.

Appellee was incorporated in 1937.

Schrank subsequently wanted to undo the transaction, and on January 6, 1938, a conference was held at which were present the two partners, and Collins, an attorney for the firm or corporation, Schrank and her attorney, Winter. Schrank denied signing any document at the previous meeting, and Hoffman went to the bank to get either the minutes or the bill of sale. Stroecker, who apparently was an officer of the bank, returned with Hoffman, and brought the document. Thereafter, on the same day, as shown by the minutes, a special meeting of the board of directors of appellee was held. At such meeting the sale of Schrank's interest to the other two partners was voided —the bill of sale destroyed, and the consideration received therefor returned to the other partners. The directors, who were Hoffman, Armitstead, and Schrank, passed a resolution authorizing the issuance of 410 shares of stock in appellee to each of the partners in consideration of the transfer to the corporation of the partnership property. The stock had a par value of $25 per share.

On January 10, 1938, stock certificate number 3 was issued to Schrank for 410 shares. On May 7, 1938, Schrank borrowed

$6,500 from appellant as evidenced by a promissory note due six months after its date, and pledged as collateral security therefor, the 410 shares of stock she had received and a bracelet containing 28 diamonds. The stock certificate was not indorsed but was assigned by a separate instrument.

On September 6, 1938, one Preg brought a suit against appellee and the three directors, hereafter called the first suit. On January 25, 1939, the court in that suit found the value of the property and business conveyed to the corporation to be $9,000; that the partners "fraudulently fixed the valuation on said partnership property and business at the total sum of $33,771.66, which was $24,771.66 over and above its actual value"; that the stock certificates issued to the partners (including certificate number 3) were "void ab initio" and should be cancelled, and new certificates for 120 shares should be issued to each of the partners. Judgment was entered to that effect.

On March 24, 1939, appellant brought this suit against Schrank and appellee, alleging the execution of the note by Schrank, the pledge of the stock, and that appellee claimed some interest in the stock but that such interest was inferior to appellant's rights. Appellant prayed for a judgment against Schrank; that the lien of appellee on the stock be declared inferior to that of appellant; that appellant be declared to have a first lien on the stock; that the court order sale of the stock; and that the proceeds thereof be applied to the payment of the judgment.

Schrank defaulted, but appellee answered denying the allegations of the bill, and as an affirmative defense, alleged that Schrank, on January 6, 1938, with intent to deceive and defraud appellee, sold her interest in the partnership to appellee for $8,257 more than it was worth, thus defrauding appellee of that amount of capital stock, represented by the certificate referred to in the complaint; that appellee did not discover the fraud until September 6, 1938, when the first suit was filed, and that appellant took the certificate "with full notice and knowledge of all the false and fraudulent representations practiced upon" appellee, and that by reason thereof, and the judgment in the first suit, appellant was estopped to claim any interest in the stock. A copy of the judgment in the first suit was incorporated in the answer. Appellee prayed that appellant be enjoined from selling the stock.

Appellant's amended reply consisted of denials, and affirmative allegations that the judgment in the first suit was rendered long after the pledge had been made; that appellant took the pledge in good faith and without knowledge of the alleged fraud; that because of the issuance of such stock to Schrank by and under the corporate seal, the possession thereof by Schrank, and the neglect of appellee to cancel or attempt to cancel such stock, appellant was led to believe and did believe that such stock was lawfully and regularly issued and possessed; and that appellee was estopped to assert any irregularity in connection with the stock, or to claim or assert that the same was void.

Appellant offered proof by Stroecker of the execution of the note and pledge of the stock by Schrank, and rested. Appellee introduced the minutes of the partnership meeting on November 26, 1937, the bill of sale made by Schrank on that day, the minutes of the special meeting of appellee's directors on January 6, 1938, and the findings of fact and conclusions of law in the first suit. Appellant objected to the introduction of each of these documents on the ground that they were "incompetent, irrelevant, and immaterial and not binding upon" appellant.

The court below found that the reasonable value of the partnership property transferred to appellee did not exceed $9,000; that the issuance of stock to the former partners for their property "was fraudulent and void ab initio" as to the amount over a total of 360 shares, or 120 shares to each partner; that by the judgment in the first suit, Schrank was ordered to deliver the certificate of stock in question to appellee for cancellation; that she was entitled to a new certificate for 120 shares of stock upon such delivery, and that the issuance of the stock to the former partners in an amount in excess of 360 shares or 120 shares to each partner was fraudulent and void; that Preg in the first suit did not have knowledge of the possession of Schrank's certificate by appellant until the month of February, 1939; and that appellant knew or should have known that Schrank's stock was fraudulently issued when it made the loan to Schrank. The court concluded that the stock certificate in question was "void ab initio" and that appellee was not estopped to assert its invalidity; that appellant was subrogated to Schrank's right to deliver the certificate in question and receive in lieu thereof a new

certificate for 120 shares; and that appellant was entitled to an order directing the sale of such 120 shares. Judgment was entered in accordance with the findings and conclusions from which appellant brought this appeal.

■ Appellant contends that it was a bona fide purchaser of the stock for value, without notice of any fraud or irregularity, and that therefore the defense of fraud in the issuance of the stock to Schrank cannot be urged against it. We believe the rule, as stated, is correct. Comp.Laws of Alaska 1933, §§ 1061, 1065, 1066, and 1067. Appellee does not dispute the correctness of the rule, but contends as the court below found that appellant knew or should have known of the fraud. Appellant contends that the finding of the court below is not sustained by any substantial evidence. Appellant does not contend that as between Schrank and appellee, no fraud was shown, and we may assume that there was fraud in that transaction. Appellant contends that the fraud cannot be urged against it. Whether it can be, depends on whether appellant was a purchaser "in good faith". The answer to that question depends on the evidence, so that there is really only one question in the case: Is the finding of the court below that appellant knew or should have known of the fraud, valid?

Before reviewing the evidence we point out that the applicable rule is stated in Comp.Laws of Alaska, § 1082, as follows: "A thing is done 'in good faith' within the meaning of this article, when it is in fact done honestly, whether it be done negligently or not." Stroecker testified that when the stock was pledged to the bank he did not know of any fraud or irregularity in the issuance of the stock to Schrank; that he had received the minutes of the meeting of November 26, 1937, evidencing the agreement of Schrank to sell her one-third interest for $3,000; and that he had at no time received the bill of sale or a copy thereof. He further testified that prior to the pledge of the stock he knew that Schrank had sold her interest for $3,000, subsequently rescinded the transaction on the ground that the interest had a much greater value than $3,000; that he had examined the financial statement of appellee prior to the pledge, and that such statement disclosed "assets of approximately $24,000.00, besides the fifteen thousand and some odd dollars that there was really"; and that he did not know how much stock

the partners had received for the property conveyed to the corporation until the time of the pledge.

Armitstead, appellee's president, testified on behalf of appellee that the bill of sale, or a duplicate thereof, was sent to appellant, but subsequently changed his testimony, and testified that the document sent to the bank was a copy or original of the minutes and not the bill of sale. He further testified as to the cancellation of the sale of Schrank's interest.

Winter, an attorney, testified that he was inclined to think that the document brought to the conference by Stroecker was the minutes rather than the bill of sale. In addition Preg testified concerning the first suit, but inasmuch as that suit was not commenced until after the pledge was made, such testimony has no bearing on the question as to whether appellant had notice of the fraud at the time the pledge was made.

■ We are of the opinion that the evidence is insufficient upon which to base a finding of knowledge on the part of appellant. The fact that appellant knew that Schrank originally sold her interest for $3,000 does not show that the property acquired by the corporation had a market value of only $9,000, and even if it did, such knowledge was destroyed by the fact that Schrank rescinded the transaction on the ground that the property was worth more. The financial statement disclosed assets of some $40,000, although Stroecker considered them worth only about $15,000. His opinion, however, does not prove market value. In short, we find no evidence to support the trial court's finding.

■ Appellee further contends that since appellant did not transfer the stock on the books of the corporation, appellant is estopped by the judgment in the first suit from asserting lack of notice of the fraud. The difficulty with that contention is that it is contrary to the statute. Comp.Laws of Alaska, § 1067, provides that if delivery of a certificate was procured by fraud, "the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless: (1) The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful * * *" Since appellant did not have "notice of any facts making the transfer wrongful", it is within the statutory exception above quoted. United States Gypsum Co. v. Faroll, 296 Ill.App. 47, 15 N.E.2d 888; Edmund

Wright-Ginsberg Co. v. Carlisle Ribbon Mills, 105 N.J.Eq. 411, 148 A. 178, affirmed, 108 N.J.Eq. 206, 154 A. 632; Murtland Holding Co. v. Egg Harbor Commercial Bank, 123 N.J.Eq. 117, 196 A. 230.

Reversed.