# COMMERCIAL BANK OF SPANISH FORK v. SPANISH FORK SOUTH IRR. CO.

No. 6718. Decided November 27, 1944. (152 P. 2d 547.)

See 28 C. J. S. Election of Remedies, Sec. 12; (1) 13 Am. Jur. 420.

*Elias Hansen,* of Salt Lake City, for appellant.

*A. U. Miner,* of Pocatello, Idaho, and *Zar E. Hayes,* of Salt Lake City, for respondent.

HENDERSON, District Judge.

The Spanish Fork South Irrigation Company, defendant and appellant, perfected this appeal from a judgment in the amount of $525 rendered against defendant and in favor of the Commercial Bank of Spanish Fork, plaintiff and respondent, by the District Court of Utah County, sitting without a jury.

The material facts established by the pleadings and the evidence introduced at the trial may be summarized as follows:

The defendant is a mutual irrigation company, incorporated under the laws of this state. Its shares of stock, which had all been issued and were outstanding prior to any of the times herein mentioned, entitled the holders thereof to designated amounts of water furnished through its irrigation system. The defendant regularly levied annual assessments against the outstanding stock.

At some time prior to June 16, 1923, one Perry A. Thomas, who was then the owner of ten and one-half shares of stock in the defendant company, evidenced by certificate No. 534, pledged the same to one Charles Wesley Nilson as security for money loaned to him by said Charles Wesley Nilson.

On or about June 16, 1923, and while said shares of stock were still pledged to Charles Wesley Nilson, Perry A. Thomas, who was then the president of the defendant company, falsely represented to its secretary that certificate No. 534 was lost, and upon such representation and his furnishing an indemnity bond the defendant issued to Perry A. Thomas certificate No. 1176 for ten and one-half shares of stock in lieu of certificate No. 534. The new certificate, which was signed by Perry A. Thomas as president and by the defendant's secretary, was in the usual form of certificates issued by defendant, and nothing was shown thereon to indicate that it was a duplicate which has been issued in lieu of another certificate.

On or about December 15, 1925, notwithstanding Charles Wesley Nilson, as pledgee, still held certificate No. 534,

Perry A. Thomas purported to pledge ten and one-half shares of stock in defendant's company to the First National Bank of Spanish Fork as security for a loan made to him by said bank, and assigned and delivered to said bank, as pledgee, certificate No. 1176. Thereafter, in the latter part of June or the first part of July, 1930, the First National Bank of Spanish Fork transferred to plaintiff the note evidencing said loan together with certificate No. 1176 pledged to secure the same. The record sustains plaintiff's contention that at the time it acquired certificate No. 1176 from the First National Bank it became a bona fide holder thereof, as pledgee for value and without notice as to any irregularity in its issuance.

In July, 1927, the loan to Charles Wesley Nilson was paid from proceeds of a loan made to Perry A. Thomas by the Federal Land Bank of Berkeley. As part of the security for this loan the Federal Lank Bank of Berkeley obtained from Perry A. Thomas a pledge of the shares of stock represented by certificate No. 534 together with a pledge of ten additional shares of stock of defendant company also owned by Perry A. Thomas and represented by certificate No. 471. The Federal Land Bank of Berkeley thereupon surrendered certificates No. 534 and No. 471 to the defendant in exchange for the issuance to it of certificate No. 1277 for twenty and one-half shares of stock.

As a result of subsequent transactions in which plaintiff participated, but which need not be herein detailed, DeMar Beck and Reed C. Beck became the owners of the twenty and one-half shares of stock pledged to the Federal Land Bank of Berkeley and of the land upon which the water-right, represented by said stock, had been used subject to a pledge thereof in favor of the Federal Land Bank of Berkeley. Perry A. Thomas had been in possession of this land until January 31, 1934, and had used thereon the water to which he was entitled under the shares of stock originally evidenced by certificate No. 534 and had paid the annual assessments levied against said stock. DeMar Beck and Reed C. Beck continued to do likewise after they had pur-

chased and taken possession of the land on January 1, 1934. No water had been used nor any assessments paid by virtue of shares of stock purported to be represented by the duplicate certificate No. 1176.

Although the plaintiff had participated in the transactions involving the transfer of the shares of stock represented by certificate No. 534, the trial court found that plaintiff had no knowledge of information as to the irregular issuance of certificate No. 1176 in lieu of certificate No. 534, until some time during the month of June, 1936. The president of the plaintiff bank testified that it was in the spring of 1936 when he learned, for the first time, that certificate No. 1176 was a duplicate issued in lieu of certificate No. 534. The president of the defendant company testified that he had informed the president of the plaintiff, some time in 1930, that certificate No. 1176 had been improperly issued. The trial court resolved this conflict in the evidence in favor of the plaintiff, and its determination in this respect will not be disturbed.

Upon learning of the irregularity in the issuance of certificate No. 1176 plaintiff proceeded to obtain from Perry A. Thomas the execution of a written instrument dated August 15, 1936, and designated as "Assignment and Bill of Sale," under the terms of which Perry A. Thomas, in consideration of the partial payment of sums due to plaintiff, assigned to plaintiff all of his "right, title, interest, and equity in or claim upon said certificate No. 1176 for 10½ shares of water stock in the Spanish Fork South Irrigation Company, with full rights and power to transfer and demand the transfer of the same on the books of the corporation, and to require the delivery of and take and use any and all water represented by said water stock."

Thereafter, on October 13, 1936, plaintiff commenced mandamus proceedings in the District Court of Utah County to compel defendant to issue to plaintiff a new certificate in lieu of certificate No. 1176. The Federal Land Bank of Berkeley and DeMar Beck and Reed C. Beck were inter-

pleaded as parties defendant. The file in this case was introduced and received in evidence in the present case. The District Court found, in the mandamus suit, that DeMar Beck and Reed C. Beck, as owners, and the Federal Land Bank of Berkeley, as pledgee, were bona fide holders for value of the ten and one-half shares of stock originally evidenced by Certificate No. 534, and, on May 3, 1939, rendered judgment dismissing the mandamus proceedings and adjudging that the rights of DeMar Beck and Reed C. Beck and the Federal Land Bank of Berkeley, under the certificates held by them, were superior to the rights of plaintiff.

On April 1, 1939, before the mandamus proceedings were finally determined, plaintiff brought the present action. The trial court entered judgment in favor of plaintiff and against defendant for the sum of $525, which is the amount found to be the value of ten and one-half shares of defendant's stock, both at the time plaintiff received certificate No. 1176 from the First National Bank of Spanish Fork and at the time plaintiff made a demand upon defendant for the issuance of a new certificate in lieu thereof. Defendant made a motion for a new trial, which was denied, and then prosecuted this appeal.

During the course of this opinion reference will be made to such additional facts as are necessary for a discussion of the problems involved.

Plaintiff's recovery rests upon the generally recognized rule that a corporation is liable for damages proximately caused to a bona fide holder for value of a certificate for its shares of stock where the certificate, although regular on its face, is void because it represents an overissue procured through fraud but has been issued by officers of the corporation having the apparent authority to do so. The rule is applicable to the case of a bona fide pledgee for value. The decisions have based liability in such cases upon various grounds such as negligence, breach of warranty or estoppel. *National Bank of Webb City* v.

*Newell-Morse Royalty Company*, 259 Mo. 637, 168 S. W. 699; *Green* v. *Caribou Oil Mining Company*, 179 Cal. 787, 178 P. 950; *Cincinnati, N. O. & T. P. R. Co.* v. *Citizens' National Bank*, 56 Ohio St. 351, 47 N. E. 249, 43 L. R. A. 777; *Lincoln* v. *New Orleans Express Co.*, 45 La. Ann. 729, 12 So. 937; 18 C. J. S., Corporations, § 254 a (3) (a), page 711. It is said that while the certificate of stock is not the stock itself but merely evidence thereof, it is nevertheless a continuing representation that the stock therein described is valid and genuine and that the person therein named is the owner of the stock represented thereby and has the capacity to transfer the same. Under this theory recovery is allowed a bona fide holder of a spurious certificate, because he has suffered damages by relying on such representations. *Fifth Ave. Bank* v. *42nd St. & G. St. Ferry R. Co.*, 137 N. Y. 231, 33 N. E. 378, 19 L. R. A. 331, 33 Am. St. Rep. 712; *Holbrook* v. *New Jersey Zinc Co.*, 57 N. Y. 616; 18 C. J. S., Corporations § 258 d, p. 724; Fletcher Cyclopedia Corporations, Vol. 11, § 5174, P. 377, § 5168, p. 359, § 5178, p. 387.

It is probable that the underlying reason for the protection afforded a bona fide holder in such cases is that ordinary stock certificates are muniments of title which have gained the confidence of business men and have been widely dealt with in the open market much the same as ■ negotiable securities. Although stock certificates are not strictly negotiable, in the sense of negotiable instruments, the tendency has been to treat and refer to them as quasi negotiable. *Brown* v. *Wright et al.*, 48 Utah 633, 161 P. 448; *Havens* v. *Tarboro Bank*, 132 N. C. 214, 43 S. E. 639, 95 Am. St. Rep. 627. Defendant apparently does not seriously challenge the general rule above stated. However, an understanding of the basis of liability in this type of case is important in deciding the questions presented here for determination.

Defendant contends that this action was barred by laches and also by the following provisions of our Code as to limi-

tations of actions which were pleaded by its demurrer and answer: Section 104-2-22, subdivision 2; Section 104-2-23; and Section 104-2-30, U. C. A. 1943. In support of this contention defendant points out that the certificate was secured by fraud more than fourteen years before the action commenced, that no assessment had ever been paid on shares of stock purported to be evidenced by certificate No. 1176, and that no water had been used by virtue of this certificate. It appears, however, that plaintiff had no actual knowledge of these facts until at least the spring of 1936 when it learned of the irregularity in the issue of certificate No. 1176. Furthermore, the trial court found that plaintiff acquired certificate No. 1176 from the First National Bank of Spanish Fork on July 30, 1930, as a bona fide pledgee for value. It is our view that the applicable statute of limitations would not begin to run on this action until the infirmity in the certificate was discovered or, by reasonable diligence, could have been discovered. The fact that no assessments had been paid on certificate No. 1176 and no water used thereunder would not charge plaintiff with constructive notice that the certificate was spurious when plaintiff had no actual knowledge of these facts and as pledgee had no duty or occasion to inquire in regard to them. *Esponda* v. *Ogden State Bank*, 75 Utah 117, 283 P. 729; *MacDonald* v. *Reich & Lievre*, 100 Cal. App. 736, 281 P. 106.

Defendant also contends that this action is barred because the water represented by certificate No. 1176 was not used for a period of more than five years and hence was abandoned by such nonuser. The plaintiff relies on Sec. 100-1-4, U. C. A. 1943. This contention cannot be maintained in view of the fact that said certificate was void and therefore the holder thereof was never entitled to any water rights thereunder. In other words, the right to the use of water cannot logically be said to have been lost by nonuse when in fact such right never had any legal existence. As has been stated, this is an action for damages for loss suffered by reason of the certificate being

spurious. The issues do not involve any question as to a stockholder's rights to water.

With respect to the subject of laches, it is debatable whether this doctrine is applicable to an action of this nature. It is said that laches is a creature of equity and no defense in an action of law. *Brownrigg* v. *DeFrees*, 196 Cal. 534, 238 P. 714. But, even assuming that laches could be properly set up as a defense to this type of action, the facts disclose no basis for its being invoked in this case. There is no showing that the delay complained of was due to any fault of plaintiff's or prejudiced any rights of defendant's. On the other hand, in 1927, the original certificate No. 534 came into defendant's possession for reissue but the defendant took no action to reclaim the duplicate certificate nor to inform the holder thereof that it was spurious.

The further point is made that plaintiff by bringing the mandamus suit made an election of remedies which bars this action. The objective sought in the mandamus proceedings was to require defendant to recognize plaintiff's rights as a stockholder under certificate No. 1176. However, this certificate was void as representing an overissue procured by fraud and the court in the mandamus suit held that plaintiff acquired no rights as a stockholder thereunder. The present action proceeds on the assumption that the certificate was void and relief is asked under the general principle hereinabove stated. The doctrine of election of remedies does not apply unless there are two or more inconsistent remedies available to a party. There is no estoppel where a party pursues a remedy which is not available to him. The fact that a party by mistake invokes a remedy not available to him under the facts of the case will not prevent him from pursuing a proper remedy which is available. *Howard* v. *J. P. Paulson Co.*, 41 Utah 490, 127 P. 284; *Boise Development Co.* v. *Boise City*, 30 Idaho 675, 167 P. 1032; Bancroft Code Practice, Vol. 1, § 183, p. 274.

Defendant asserts that plaintiff cannot prevail in this action as the judgment in the mandamus proceedings is res adjudicata as to any rights herein claimed. An examination of the file in the mandamus action shows that, under the issues therein submitted, the court's decision established only that said certificate was void and conferred upon the holder thereof no rights as a stockholder. The present action is brought on the assumption that the certificate is void and damages are sought in accordance with the general rule above stated. The judgment entered in this action is entirely consistent with the judgment rendered in the mandamus proceedings. The rights claimed in this suit, although growing out of the same subject matter, gave rise to a distinct or separate cause of action and were not put in issue in the former suit. Furthermore, the questioned issues in this suit are neither germane to nor essentially connected with the actual issues raised in the mandamus proceedings. In such cases the doctrine of res adjudicata is not applicable. *Title Guarantee & Trust Co.* v. *Monson,* 11 Cal. 2d 621, 81 P. 2d 944; 34 C. J. § 1226, p. 805, § 1232, p. 818.

As shown by the above statement of facts, plaintiff, after it had learned of the irregularity in the issuance of certificate No. 1176, proceeded to obtain an assignment thereof from Perry A. Thomas. This, defendant contends, resulted in a merger and by reason thereof plaintiff could not recover in this action as a bona fide holder for value. We find no merit in this argument. It is conceded that certificate No. 1176 was void and conferred on the holders thereof no title to any shares of stock in the defendant company. Although plaintiff intended to acquire a lien on ten and a half shares of stock in defendant's company when it purchased said loan from the First National Bank of Spanish Fork and also subsequently attempted to establish its legal ownership thereof, there was no title to which such lien or claim of ownership could attach. Hence, the doctrine of merger is not involved in this case. *Holbrook* v. *New Jersey Zinc Co.,* supra; *Sokoloff* v. *Wildwood Pier &*

*Realty Co.*, 108 N. J. Eq. 362, 155 A. 125. Furthermore, the purported assignment did not disturb plaintiff's action for damages as a bona fide pledgee for value. On the other hand, such assignment given to plaintiff after it was charged with notice that the certificate was irregular, would not enlarge plaintiff's rights against the defendant company. Its relief would be limited to the actual damages sustained by it through the loss of its security and which in no event could exceed the reasonable value of the shares of stock purported to be represented by the void certificate. *National Bank of Webb City* v. *Newell-Morse Royalty Co.*, supra; *Holbrook* v. *New Jersey Zinc Co.*, supra.

While the proof on the question of damages is not entirely satisfactory, there is some evidence in the record showing that the indebtedness for which certificate No. 1176 was pledged to secure was approximately $700, that Perry A. Thomas was unable to pay said indebtedness and that the value of the shares of stock purported to be represented by said certificate amounted to $525, both at the time plaintiff received the certificate from the First National Bank of Spanish Fork and at the time plaintiff made a demand upon defendant for the issuance of a new certificate. Apparently the trial court rendered judgment for the value of ten and a half shares of stock on the theory that such amount did not exceed the damages suffered by plaintiff through the loss of its security. We are not inclined to disturb the trial court's findings and judgment on this question.

The further question is raised as to whether or not plaintiff was a bona fide pledgee for value. We are satisfied from an examination of the record that plaintiff acquired certificate No. 1176 from the First National Bank of Spanish Fork in 1930 as a bona fide pledgee for value. Our opinion as to whether or not plaintiff, subsequent to its acquisition of said certificate, should be charged with constructive knowledge of the facts rendering the certificate void has been hereinabove indicated in our discussion relative to the subject of laches and the questions

pertaining to the claimed bar of the statutes of limitation. However, defendant makes the further point that the fact that certificate No. 1176 was issued to an officer of the defendant company and signed by such officer as president placed upon a subsequent holder thereof the duty of making inquiry and charged such holder with knowledge of any facts which might have been discovered thereby. While there is some conflict in the authorities on this question, it is our view that the holder of a certificate of stock, regular on its face, and issued by officers having the apparent authority to do so, is not burdened with the duty of inquiry merely because the stock certificate has been issued to an officer of the corporation. Doubtless in most cases, officers of a corporation are the owners of its stock, and such a situation is not so unusual as to arouse the suspicions of a prospective purchaser in regard to the authority or regularity of its issuance. *Green* v. *Caribou Oil Mining Company,* supra; *Cincinnati, N. O. & T. P. R. Co.* v. *Citizens' National Bank,* supra.

An examination of the record and the assignments of error made by defendant discloses no error in the proceedings had and the judgment rendered by the trial court. Judgment is therefore affirmed with costs to respondent.

WOLFE, C. J., and LARSON, McDONOUGH, and WADE, JJ., concur.

TURNER, J., being disqualified, did not participate herein.